## Magraw, Trustee of Mahon, *versus* Pennock.

1. An authority to borrow money, and grant a mortgage to secure it, in order to pay the debts for which the trust estate is liable, is an authority to grant a mortgage to such creditors themselves. .

2. A trustee of real estate, at law, has a right to execute a mortgage of such estate, which mortgage derives its force from his *interest*, and not from a mere power; but if the mortgage is improperly executed, the trustee will be liable in equity to his *cestuis que trust;* and their equity may, under certain circumstances, follow the legal estate into the hands of the mortgagee, or the purchaser, under proceedings to foreclose it.

3. If the *cestuis que trust* have conducted unfairly, and have induced their trustee to involve himself personally, for their debt, by consenting to secure it on their trust estate, they have no shadow of equity.

4. An act of assembly clothed the *cestuis que trust* with power to consent to, or withhold their consent from, a mortgage of their estate. They consented, and by such consent, have concluded their own rights; but we do not decide that they have prejudiced the rights of their children.

ERROR to the District Court of *Allegheny county*.
*Scire facias sur* mortgage, dated October 22, 1844, made by

James B. Irwin, trustee of John D. Mahon and Agnes M., his wife.

The *scire facias* was duly served on James B. Irwin, who filed an affidavit of defence, and pleaded " payment with leave."

On the 7th August, 1851, the death of James B. Irwin was suggested, and H. S. Magraw, the present trustee, substituted.

January 10, 1853, the cause was submitted to a jury, who rendered a verdict in favor of plaintiff, for $1801.60, subject to the opinion of the court, on the following reserved points:

1. " That, under the evidence given in the cause, it does not appear that James B. Irwin, the defendant, had any power or authority to mortgage the lands and tenements described in plaintiff's writ, and that plaintiff is not entitled to recover.

2. " That the proper legal parties have not been, and are not substituted on record, as defendants in this suit; H. S. Magraw being no party to the mortgage, and that no recovery can be had against him in this suit."

June 25, 1853, the court, WILLIAMS, J., entered judgment on the case stated in favor of the plaintiff, and this is now assigned for error.

The mortgage of the 22d October, 1844, recites as follows, viz:

" Whereas, by a marriage article, made the 15th day of January, 1833, between John D. Mahon, Esq., of the first part, Agnes M. Rose, of the second part, and Benjamin Darlington and Abisha Way, of the third part; the said B. Darlington and A. Way, were appointed trustees of all the estate of the said Agnes M. Rose, for certain purposes therein specified, as by reference to said article, &c., will appear; and, whereas, the petition of J. D. Mahon was filed in the Court of Common Pleas of Allegheny county, No. 263, of June Term, 1843, representing that the said A. Way has since died, leaving B. Darlington sole surviving trustee, and praying the court, the said B. Darlington having settled his account, and tendered a resignation of said trust, to accept the same, and confer the appointment of trustee on J. B. Irwin; and, whereas, on the 30th of June, 1843, the court did appoint the said J. B. Irwin, trustee, and ordered that all moneys, documents, and other papers, in any way connected with the trust, should vest in him.

" And, whereas, by an act of assembly, passed 13th March, 1844, the said J. B. Irwin, trustee as aforesaid, was fully authorized, with the written approbation of the said John D. Mahon, and Agnes M., his wife, to borrow, on mortgage of any part of the trust estate, such sum or sums of money, as may be required to pay the debts for which said trust property was in any way liable, or which may have been contracted in the execution of said trust.

"And, whereas, the said James B. Irwin, trustee of John D. Mahon, and Agnes M., his wife, by his obligation under his hand and seal, duly executed, stands bound unto the said James Pennock, in the sum of $2400, conditioned for the payment of $1200, on the 11th July, 1849, with interest on the same, payable at the expiration of every six months," &c.

The instrument then proceeds to mortgage a certain lot, situate on Liberty street, Pittsburgh, being No. 8, in Remington's plan of a subdivision of parts of lots, numbered 442, 443, and 444, in Wood's plan of the city of Pittsburgh; said lot extending on Liberty street 18 feet; the depth of said lot being 100 feet on the west, to a 10 feet alley, and on the east of said lot, 117 feet 10 inches, extending on said alley 24 feet and a quarter inch, &c.

The mortgage concludes as follows: "In witness whereof, the said James B. Irwin has hereunto set his hand and seal, the day and year first above written."

*Copy of part of the Marriage Article.*—"Marriage articles, concluded upon, made, and entered into, this 15th January, A. D. 1833, by and between J. D. Mahon, Esq., of the first part, Agnes M. Rose, of the second part, and Benjamin Darlington and Abisha Way, of the third part, all said parties residing in Pittsburgh, testify that, whereas, a marriage is agreed to be had and solemnized immediately after the date of these presents, between the first and second party, it has been mutually stipulated and agreed upon between them, that all the real and personal estate of the second party, shall be regulated, disposed of, and firmly settled as follows, viz: 1st. The said Agnes doth hereby grant, bargain, sell, assign, and set over, all her estate, real, personal and mixed, whatsoever, and wheresoever, to her friends, Benjamin Darlington and Abisha Way, above-named, and to the survivors of them, and the executors and administrators of such survivor, to have and to hold the same in trust, and in special confidence, that they will take the same into their possession, care, and management, and apply the personal estate to the discharge of all the debts of the second party, now due or owing; and also, to the payment of all such debts as she may contract for household furniture, and other necessaries required by her, for her comfortable establishment, after her marriage as aforesaid; and then from time to time, pay over to her, for the support of herself and her husband, such sums as may be necessary for their support and maintenance, and the residue of the personal estate to be so vested by them, according to their best discretion, as to be secure and productive, for the accomplishment of the purposes specified in these articles. And, further, to let upon lease for years, or upon ground rent, forever, all or any part of the real estate of the second party

[Magraw, Trustee of Mahon, *v.* Pennock.]

aforesaid, or to. make improvements or buildings on the same, with the written assent and approbation of the terms, by the first and second party ; and with their like assent and approbation, to borrow money for the purpose of making such improvements, and to mortgage any portion of said real estate, for the security of repayment of such loan or loans, and from time to time to pay over to the first and second parties, out of the rents or other income, from the estate thus vested in the third party, as may be deemed necessary, by the first and second party, for their own comfort and support, or for the maintenance, support and education of William J. Rose, son of the second party, by her late husband, William Rose, deceased ; as, also, for the support, maintenance, and education, of such children as may be born to the first and second parties, during the present marriage." · * * * * * * *

" And the third party shall have full power and authority to employ and pay agents to assist them in the execution of their trusts ; and also to retain for themselves a suitable compensation for their trouble and services, in managing the property hereby vested in them.

" And it is the clear understanding of all the parties, that the title of the property of the second party, is hereby absolutely vested in the third party, for the purposes above set forth ; and to be in no way liable for any debts contracted, or hereafter to be contracted, by the first party ; but this express provision shall not extend, or be construed to debar the third party from employing and compensating the first party, in the care and management of the trust estate."

*Hepburn* and *Shaler & Co.*, for plaintiffs in error, contended that the suit should have been against the executors of Irwin, and that they should have been substituted, instead of Magraw, the new trustee ; and referred to *Mans* v. *Wilson*, 3 H. 151 ; *Rogers* v. *Smith*, 4 Barr, 93 ; 1 Rawle, 147 ; 2 Wh. 11 ; *Cotteral & Holt* v. *Hampson*, 2 Vern. 6 ; 1 Pow. on Mort. 252 ; *Cadbury* v. *Duval*, 10 B. 265 ; *Burt* v. *Dennett*, 2 Brown, Ch, 225 ; Hill on Trustees, 174, 188, 282.

*Loomis* and *McConnell*, for defendants in error, referred to *St. John's Church* v. *Steinmetz*, 6 H. 273, 274 ; Act 14th June, 1836, secs. 24, 25 ; 6th sec. of Act of 1705, relative to mortgages.

The opinion of the court was delivered, December 14, 1853, by
LEWIS, J.—It would seem, that Mr. Magraw, on the trial below, objected to the mortgage being read in evidence, because he " is not a party to it ; and that no representative of the

mortgagor is a party to it;" and now assigns for error, that "the proper legal parties have not been, and are not substituted on the record, as defendants in the suit," &c.    Mr. Magraw was substituted, without objection, in the place of James B. Irwin, whose death was suggested.    It is stated in the entry, that H. S. Magraw is "the present trustee;" and the presumption, in the absence of objection at the time of substitution is, that he was properly appointed; and that the substitution was by his own consent.    After such consent, and going to trial on the plea of "payment with leave," he cannot raise the objection, that he is not the proper party; nor can he, on such issue, be heard to allege, that other parties, without naming them, ought to be joined.    But we see no valid objection to the proceedings on this ground.    Irwin was a trustee, not merely to hold the estate, but also to perform certain duties pertaining to the trust.    The proper court, therefore, had the power, upon his death, to appoint Magraw in his place; and upon such appointment, "all the rights, powers, and authorities" of Irwin ceased, and vested in Magraw, "as fully, to all intents and purposes, as if he had been originally appointed trustee." Sec. 2, Act 14th April, 1828. The proceeding on the mortgage is only against the land.    The plaintiff can demand no more than a judgment *de terris*.    Magraw, in whom the real estate vested, was therefore a proper party.    If others, entitled to be heard, are admitted, they will not be prejudiced by this trial.

Although the mortgage does not set forth the original nature of the debt, which it was given to secure, it recites the Act of 13th March, 1844, authorizing it to be given for money borrowed "to pay the debts for which the trust property was in any way liable."    The trust was created in 1833; Irwin was appointed in the place of Darlington on the 30th June, 1843. In March, 1844, the act was passed, authorizing the mortgage. Irwin gave his bond to Pennock for the debt, binding himself personally for the amount; although the obligation shows that he described himself as trustee, and was acting in regard to the trust, and not in respect to his own affairs.    On the 22d October, 1844, the mortgage was given to secure the bond, with the written consent of John D. Mahon, and Agnes, his wife, according to the act of assembly authorizing it.    An authority to borrow money, and grant a mortgage to secure it, in order to pay the debts for which the trust estate is liable, is an authority to grant a mortgage to such creditors themselves.    If the debts are properly chargeable against the trust estate, a mortgage to secure them, and a mortgage to secure the money borrowed to pay them, are, in substance, identical; with this difference only, that it is less perilous to the *cestuis que trust* to execute the mortgage directly to the creditor, than to grant it to a stranger,

[Magraw, Trustee of Mahon, *v.* Pennock.]

to secure money borrowed, which may be afterwards lost or mis-applied.

The law deals with matters of substance, and disregards forms, where they interfere with the justice of the case. Mr. Irwin, when called upon to execute the bond and mortgage in question, would be necessarily ignorant of the nature of the debts con-tracted, during the ten years in which his predecessor had acted. It is not proposed to be shown, that the bond was given for a debt contracted during the administration of Mr. Irwin. The plaintiff in error merely assumed to show, that it was given for " a book account for goods, wares, and merchandize, sold and delivered to John D. Mahon and wife, at sundry times prior to the date of the mortgage." It is clear, that the *cestuis que trust* have received the benefit of the debt in some way; and when Mr. Irwin saw that it was a debt for articles which they had received, and found that they recognized the demand, as one properly chargeable against the trust estate, and that they consented in writing, that it should be secured by mortgage on the estate, he had a right to presume, that it was a debt con-tracted to make improvements, or was otherwise properly charge-able upon the trust estate; and that it was his duty to execute the bond and mortgage. The Act of Assembly of 1844, clothed Mr. and Mrs. Mahon with full power to consent, or withhold their consent. They were both of full age and sound mind. There was no actual want of capacity or discretion, to act for themselves. The legal disability of coverture was, *quoad hoc,* removed by the statute; and Mrs. Mahon was thus rendered as competent to act in the premises, as if she had never been mar-ried. Clothed with such capacity and power, the law charges her with the duty of performing them fairly, or taking the con-sequences of her own omission. It must be remembered, that Irwin was clothed with the legal estate, and that, *at law,* as such owner, he had the right to execute the mortgage, inde-pendent of the Act of 1844. The mortgage, at law, derives its force from his *interest,* and not from a mere *power.* It is true, that the execution of a mortgage, improperly executed, by a trus-tee, would make him liable to the *cestuis que trust,* in equity, for the breach of trust; and their equity might, under certain cir-cumstances, follow the legal estate into the hands of the mort-gagee, or the purchaser, under the proceedings to foreclose it. But the Act of 1844 interposes in this case, to protect the trustee and the estate from such liability. If the *cestuis que trust,* who have no right at law, and who are only entitled to protection, upon principles of equity, have conducted unfairly in the mat-ter, they have no right to relief. If, under statutory power to act in the premises, they induced their trustee to involve him-self personally, for their debt, by consenting to secure it by the

[Magraw, Trustee of Mahon, *v.* Pennock.]

mortgage upon their trust estate, they have not a shadow of equity. Under such a state of facts, it is against good conscience to permit them to throw their own debts upon their innocent trustee, in order that they may enjoy the profits of the estate, which they agreed to pledge for *his* security. The mortgage is his security, as well as that of the creditor. When it is remembered, that the trustee was but recently appointed; that he must have been ignorant of the nature of the debts which had been contracted before he assumed the duties of the trust; that the *cestuis que trust* were perfectly familiar with all the facts, and were fully competent to act, the presumption is, that the trustee was induced, by their own written consent, to believe that the debt was properly chargeable upon the estate. There was nothing offered, or given in evidence, to repel this presumption. They have therefore no *equitable* title to impeach the mortgage. We have already said, that it was good at *law*. It is not necessary to decide, that even if the trustee was aware that the debt was one for which the estate was, not liable, the *cestuis que trust* could not charge him with a breach of trust, to which, with full legal capacity to act, they gave their consent in writing.

Enough has been said, to show that the purchaser under the mortgage would take the *legal* estate, together with the equitable interest of Mr. and Mrs. Mahon. If others have any vested rights under the trusts, they can assert them, and have an adjudication upon them, when their rights of possession accrue. If the mortgage binds any interest whatever, it is sufficient to sustain the present proceeding. All that is decided at present is, that Mr. and Mrs. Mahon, by their written consent, given under the act of assembly, have concluded their own rights; although we have not decided, that they have prejudiced those of their children. This is not in opposition to the doctrine of *Smith* v. *Rogers*, 4 Barr, 101, and *Bomberger* v. *Cliffinger*, 5 W. & S. 311, where the objection to the title was not, that the power exercised under the statute did not bind the interest of the parties acting under it, but that it could not conclude those in remainder.

Judgment affirmed.